710 So.2d 1196 (1998)
Karl S. BURGE
v.
ALLSTATE INSURANCE COMPANY.
No. 97-CA-1087.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1998.
*1197 Ford T. Hardy, Jr., Howard, Laudumiey, Mann, Reed & Hardy, New Orleans, for Plaintiff/Appellant.
James L. Donovan, Jr., Donovan & Lawler, Metairie, for Defendant/Appellee.
Before BOWES, GOTHARD and DALEY, JJ.
GOTHARD, Judge.
Plaintiff, Karl S. Burge, appeals a decision of the trial court which rules in favor of defendant, Allstate Insurance Company (Allstate), which finds that no coverage exists for plaintiff's claim and dismisses his action. For reasons that follow, we affirm.
This action began when Mr. Burge filed suit against his automobile insurer, Allstate, for refusing his claim for damages after his car was stolen from the parking lot of his apartment building in Kenner. According to the petition, Mr. Burge was the owner of a 1993 Ford Mustang which was stolen on December 29, 1993. Mr. Burge reported the theft to his insurance company, Allstate, and made a claim for damages. Allstate refused the claim asserting that the policy had been canceled for non-payment of premiums, and was no longer in force at the time of the theft. The matter went to a trial on the merits, after which judgment was rendered in favor of Allstate. After a motion for new trial was denied, plaintiff filed this appeal.
At the trial on the merits, plaintiff, Karl Burge, testified that he has had insurance on his home and automobile with Allstate since the 1980's. In April, 1993, he purchased a Ford Mustang, which he insured with Allstate. At that time, he also moved from LaPlace to Kenner where he was living in an apartment at 4520 Williams Blvd. He personally notified his Allstate agent, George Gaudin, of that change of address, and the change is reflected in Allstate's records. At some point between April and the time the car was stolen on December 29, 1993, Mr. Burge moved to 1356 West Esplanade in Kenner. It is not clear from Mr. Burge's testimony when that move took place. However, he maintains the move occurred prior to the October 8, 1993 renewal date of the policy. According to his testimony, Mr. Burge went to Mr. Gaudin's office personally to pay the premium on his insurance policy, and to notify Mr. Gaudin of the new address. He paid the first of four monthly installments on his automobile insurance policy. At that time he informed Mr. Gaudin verbally of his move to the West Esplanade address. He also stated that he gave Mr. Gaudin's office manager, Ms. Watt, a piece of paper with the new address on it. He was assured by Ms. Watt that the address would be changed on the records. Mr. Burge also testified that he notified the post office of the change of address and was receiving his mail at the new address on West Esplanade with no problem.
Mr. Burge said that he called Mr. Gaudin on December 29, 1993, the morning of the theft, and was told the premium was late. He was advised to come in immediately and pay the outstanding premium. When he got to Mr. Gaudin's office a short time later, he was told that his policy had been canceled. He testified that Mr. Gaudin's exact words were "you're on your own Daddy-O". Mr. Burge maintains that he did not receive a bill from Allstate after he made the October payment, nor did he receive the cancellation notice sent by Allstate on November 23, 1993.
On cross-examination Mr. Burge admitted that he was often late paying his bills. A stipulation was made by the plaintiff that Mr. Burge was often hard pressed to pay his bills, and a review of his bank account at the time the premium payment was due on the insurance policy might indicate that he did not have sufficient funds to make the payment. However, he maintains that he often borrowed money from his parents and girlfriend, and could have obtained the funds to pay the premium had he received a bill.
Mr. Burge admitted that when he purchased the policy in April, 1993 he understood that payment was to be made in four installments in April, May, June and July. He admitted that one of his premium checks was returned for insufficient funds, and that a cancellation notice was sent out during the first six months of the policy term. The policy renewed on October 8, 1993 for a second six month term and Mr. Burge confirmed *1198 that he understood, when he paid the October payment in Mr. Gaudin's office, he would have to make one payment a month for the months of November, December and January to keep the policy in force.
The court also heard testimony from Penelope Watt, who was employed by Mr. Burge's Allstate agent, George Gaudin, from September, 1993 to July, 1994. She remembered Mr. Burge as a policyholder who came in once on January 12, 1994 to make a payment on his automobile insurance. After checking the computer, Ms. Watt discovered that Mr. Burge's policy was canceled for nonpayment of premium. Ms. Watt called the underwriter on Mr. Burge's behalf and the payment was accepted. She recalled that Mr. Burge wore a Kenner Police uniform.
Ms. Watt did not recall seeing Mr. Burge in the office in October, 1993. If Mr. Burge had come in to change his address, Ms. Watt would have executed an endorsement to the policy to reflect the change. No such endorsement is in the file.
Ms. Watt explained that policyholders receive their premium notices by mail and have the option of mailing payments directly to the Dallas office, or coming into the local agent's office and paying the premium in person. She testified that checks received in the local office by policyholders paying in person are posted and deposited in the Whitney Bank locally, and would not have been sent to the Dallas office. She also explained that the policy of the office was to call policyholders who were in danger of losing their insurance due to nonpayment of premium. Those calls were made weekly. However, she had no independent recollection of calling Mr. Burge specifically.
George Gaudin, Mr. Burge's Allstate agent, testified that Mr. Burge called the office on December 29, 1993 to report the theft of his car. At that time he was told his insurance coverage had lapsed. Mr. Gaudin explained that the procedure in such cases is to take money from the policyholder if it is offered for the premium and send it in to the underwriters, who will then either reinstate the policy or refund the premium at their discretion. Nevertheless, there would be no coverage for theft during the time in which the policy had lapsed. Mr. Gaudin verified Ms. Watt's testimony concerning the procedure used for posting and depositing checks made for premium payments. He explained that cancellation notices are generated from either the Jackson, Mississippi, or the Dallas, Texas office. His office is made aware of any of his customers who have received cancellation notices, and an effort is made to contact them in the method described by Ms. Watt.
The defendant presented evidence from Michael Dewey O'Connell, a senior staff specialist with Allstate, who explained the cancellation procedure. Mr. O'Connell testified that cancellation notices, and a record of mailing of those notices, are generated by computer. The cancellation notices produced by the computer are verified by Allstate personnel before mailing. A certificate of bulk mailing is filled out with the post office. Mr. Burge's cancellation notice, with an effective date of December 7, 1993, was mailed out on November 23, 1993 to plaintiff's Williams Boulevard address. The amount due on the cancellation notice was $198.25.
Mr. O'Connell verified that the policy was a six month policy renewed in October, 1993 on a four month payment plan. Only the October payment was received. He further testified that, if the cancellation notice had been returned to Allstate by the postal service, a notation would have been made on the file. No such notation exists on Mr. Burge's file. Allstate considers that the mailing process was complete and the cancellation notice was delivered to Mr. Burge. Notification of the cancellation was also sent to the lien holder on the vehicle insured. Documentation to support Mr. O'Connell's testimony was introduced into the record.
On cross-examination, plaintiff's counsel presented a letter generated from Allstate and mailed to Mr. Burge on December 29, 1993 explaining that a deductible had been added to the comprehensive portion of the automobile policy. However, the policy number and effective date of the policy referenced in the letter did not match that of Mr. Burge's policy. Mr. O'Connell testified *1199 that the letter was mistakenly sent to Mr. Burge, and was unrelated to his policy.
At trial, joint exhibits were introduced which included the following pertinent documents:
1. The Allstate cancellation notice issued on November 23, 1993, showing a cancellation effective date of December 7, 1993,
2. The record of mailing of the cancellation notice from Allstate, which was sent to the plaintiff's Williams Boulevard address.
3. Checks written for policy premiums by Mr. Burge dated April 12, 1993, May 10.1993, July 16, 1993 August 13, 1993, and October 8, 1993, and
4. A copy of the insurance policy in question.
After reviewing the evidence, the trial court held in favor of the defendant, finding that the plaintiff had not met his burden of proof that he had advised Allstate of his new address, thereby unsuccessfully rebutting the presumption that the cancellation notice was received. Accordingly, the trial court dismissed plaintiff's action. It is from that judgment that plaintiff appeals.
It is clear from the record that premiums on the policy were not paid in a timely manner. It is also clear that Allstate mailed the cancellation notice to plaintiff's previous address, rather than his current address. Plaintiff argues that the trial court erred in placing the burden on the plaintiff to show that he made Allstate aware of his address change. He argues that the law on cancellation of a policy for non-payment of premium must be strictly construed, giving Allstate the burden to prove the cancellation notice was sent to the correct address. Therefore, the cancellation is ineffective because Allstate mailed it to the incorrect address.
Defendant argues that, under the law, the insurer must mail the cancellation notice to the last known address, not necessarily the correct address. Because, Mr. Burge did not notify Allstate of his move from Williams Boulevard to West Esplanade, Allstate has effectively notified plaintiff of the cancellation in accordance with law by sending the notice to the Williams Boulevard address. Further, Allstate argues it has met its burden of proof of mailing by the evidence produced at trial.
An insurance company has the burden of proving that the policy had been cancelled prior to the date of the loss which gave rise to the denied claim. Chapman v. Leger, 405 So.2d 604 (La.App. 3 Cir.1981). Where the evidence is sufficient to establish a prima facie case that the insurer mailed the cancellation notice in compliance with the relevant statute, the burden shifts to the insured to establish non-delivery of the notice. Gooden v. McMorris, 588 So.2d 783 (La.App. 4 Cir. 1991), writ denied, 590 So.2d 1202 (La.1992).
Although the arguments of both parties cite LSA-R.S. 22:636 as authority, we find LSA-R.S. 22:636.1, which is specific to the cancellation of automobile insurance policies, to be controlling. In pertinent part, that statute provides as follows:
B. (1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
. . . . .
D. (1) No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to nonrenewal.
. . . . .

*1200 F. Proof of mailing notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
We find subsection D(1) to be ambiguous as to the question of whether cancellations of automobile insurance policies must be sent by certified mail, or whether the exemption applies only to the cancellation of binders. However, in the preamble to Acts 1993, No. 215, which made the relevant amendments to this portion of the statute, the legislature indicates its intent to exempt all cancellations due to non-payment of premiums from the certified mail requirements. We find further support in this view in the decision rendered in Folds v. Protective Cas. Ins., Co., 26,323 (La.App. 2 Cir. 12/7/94), 647 So.2d 1215, which interprets the above statute in accordance with indicated legislative intent.
We find that proof by the insurance company of mailing of the cancellation notice to the named insured at the address on the policy, or as in the instant matter plaintiff's subsequent address change, shall be sufficient proof of notice under the applicable statute. Folds v. Protective Cas. Ins., Co., supra. We do not find plaintiffs's argument that the insurance company has the burden of proving that the cancellation notice was sent to the correct address convincing. Accordingly, we do not find that the trial court failed to hold Allstate to its required burden of proof.
In the instant matter, there is sufficient proof to make a prima facie case that Allstate mailed a cancellation notice dated November 23, 1993 with a cancellation date effective December 7, 1993, to the plaintiff at the address on the company records. Thus, the burden shifted to the plaintiff to show that the notice was not received. We do not find that the plaintiff met that burden.
It is the plaintiff's testimony that he moved from the Williams Boulevard location to the West Esplanade location, but the time of that move is not established. Further, the address on plaintiff's last premium check dated October 8, 1993 reflects the Williams Boulevard address, which is consistent with Allstate's records and with the cancellation notice. It is also significant that, although plaintiff testified that he went personally to the local agent's office to pay the October, 1993 premium, his check shows that it was negotiated in Texas, the cite of mailed premium processing. Plaintiff also testified that he filed a change of address card with the post office and received all other mail, and could give no explanation why the cancellation notice, even though sent to a previous address, would not have been delivered. He acknowledged that, although he was aware that under the terms of his policy premium payments were due in November, December and January, he failed to pay them.
It is clear from the record that the trial court decided the matter on credibility. The court was not persuaded by plaintiff's testimony that he was not aware of the cancellation, and did not find that he successfully rebutted the presumption that the cancellation notice was received with proof of nondelivery. Folds v. Protective Cas. Ins., Co., supra. Given the circumstances of this case, we find no manifest error in that ruling. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.