J^CLARENCE E. McMANUS, Judge Pro Tem.
Defendant State Farm Insurance Company (hereafter “State Farm”) appeals from a trial court judgment which rules in favor of the plaintiffs Michael and Jennifer Doucet. Specifically, the trial court ruled that defendant Eartha Powell was covered by her State Farm policy at the time of the accident. We affirm.
Plaintiff Michael Doucet filed a Petition for Damages on July 1, 1997, alleging that he and his minor daughter Jennifer were injured when his vehicle was struck in the rear by a 1995 Pontiac Grand Prix owned and driven by Ms. Powell. In his Petition, Mr. Doucet filed suit against Ms. Powell and State Farm as her liability insurer. On August 14, 1997, State Farm answered, contending that there was no State Farm Mutual Automobile Policy in effect at the time of the accident because Ms. Powell’s policy had been canceled for non-payment of premiums. On December 29, 1997, State Farm filed a Motion for Summary Judgment arguing that it did not have an insurance policy issued to Ms. Powell in effect on the date that the accident occurred. On February 6, 1998, the trial court denied State Farm’s Motion for Summary Judgment.
The matter went to trial on the merits, after which judgment was rendered in favor of the Doucets. The trial court found that Ms. Powell’s vehicle was covered by a State Farm policy at the time of the accident. State Farm filed a 1 ¡.timely appeal. The only issue for this court’s review on appeal is coverage.
During the trial, it was stipulated that Ms. Powell testify by deposition. In her deposition, she testified that Mr. Richard Jackson was her fiancé at the time of the accident on December 14, 1996. She resided at that time at 1740 Wellington Drive. She testified that she would reside with Mr. Jackson at 5961 Becker Street when they lived together. She testified that she purchased the vehicle involved in the accident, a 1995 Pontiac Grand Prix, in July of 1996 from Ray Brandt Specialty in Marrero. She traded in Mr. Jackson’s 1993 Dodge pickup truck for her 1995 Pontiac Grand Prix and transferred insurance from the Dodge pick-up truck to the Pontiac Grand Prix. The Dodge pick-up was insured by a State Farm policy with Mr. Jackson listed as the named insured and Ms. Powell listed as an additional driver. Ms. Powell' testified that her Pontiac Grand Prix was initially covered on Mr. Jackson’s policy.
In July of 1996, Ms. Powell obtained her own insurance policy on the Pontiac Grand Prix. She testified that a new policy was issued to her in July of 1996 listing her as the named insured. After she switched the Pontiac Grand Prix to her own policy, she was issued her first insurance card from State Farm indicating that she was insured from July 2, 1996 to August 21, 1996. State Farm mailed hqr another insurance card stating that she was insured from July 3, 1996 to February 21, 1997. Although Ms. Powell had the Pontiac Grand Prix switched over to her own policy in July, the vehicle lingered on Mr. Jackson’s policy for several months. Ms. Powell believed that Mr. Jackson paid the premiums on all of the policies including the policy which listed her as the named insured on the Pontiac Grand Prix.
Ms. Powell testified that she went to Ms. Lisa Campbell’s State Farm office on September 13, 1996 in order to sign paperwork to transfer the Pontiac Grand Prix in her own name. Ms. Powell contends that she was following up on her initial contact with State Farm which occurred in July of 1996 to obtain her own 13msurance policy. Ms. Powell further testified that she believed that she had insurance coverage because she was given her first insurance card stating that she was insured from July 2,1996 to August 21,1996.
Ms. Powell testified that she did not remember filling out a non-binding application for insurance nor did she remember Ms. Glenn Bridges advising her that she did not have any insurance coverage. She testified that she was not notified of the *1230 cancellation of the policy, however, she did not receive any insurance premium bills nor any other information regarding her State Farm policy except for her insurance card. She contends that she did not pay the premium on her policy because she thought that her Pontiac Grand Prix was also covered by Mr. Jackson’s policy and that he was paying the premium.
Ms. Glenn Bridges testified for State Farm. In September of 1996, Ms. Bridges was employed by Ms. Lisa Campbell as an office assistant. In the course of her employment, she gave insurance quotes and wrote insurance policies. Ms. Bridges testified that Ms. Powell came into Ms. Campbell’s office on September 13, 1996 to make a payment on an insurance policy. Ms. Bridges further testified that she checked the policy number on the insurance card that Ms. Powell presented to her when she came into the office. She stated that the information in the computer database indicated that the policy had been canceled. Ms. Bridges did not accept payment on the premium because the policy had been out of force for over 30 days. Ms. Bridges then advised Ms. Powell to complete a non-binding application for insurance. Ms. Powell’s application was subsequently denied for failure to report traffic violations. Ms. Bridges placed the letter in Ms. Powell’s file, but never called Ms. Powell because the rejection letter is automatically sent to the applicant by computer. Ms. Bridges also testified that an insurance identification card cannot be generated if the policy is canceled.
The record indicates that Policy Number 590-5757-B21 18 B was issued to l4Ms. Powell as the named insured covering the Pontiac Grand Prix and it was to replace Policy Number 590-5757-B21 18A wherein Ms. Powell was named as an additional driver. Ms. Campbell, as State Farm’s agent, counter-signed the replaced policy on July 21, 1996. The cancellation notice which was sent to Mr. Jackson was dated July 10, 1996 and refers to Policy Number 590 5757 B21 18B. The cancellation notice stated the premium was due before July 23,1996.
On December 29, 1997, Mr. Walter En-nis, a claims specialist employed with State Farm, signed an affidavit stating he has been handling the claim involving the suit between the Doucets and Ms. Powell. In his affidavit, Mr. Ennis states that there were no policies issued to Ms. Powell which were in effect on December 14,1996. He further states that policy number 5905-757-B21-18B (which replaced policy number 5905-757-B21-12A) was canceled on July 23, 1996. Ms. Powell submitted a Non-Binding Application for State Farm Mutual Automobile Insurance on her Pontiac Grand Prix and this application was turned down on September 20, 1996 for failure to disclose traffic violations and failure to provide acceptable evidence of automobile insurance in force within 30 days of the date of the application. He further states that she received the insurance coverage card for the next policy period due to the monthly payment plan. State Farm has not collected insurance premiums from Ms. Powell on the Pontiac Grand Prix since July 23,1996.
After a trial on the merits, the trial court found that Ms. Powell was covered by her State Farm policy. From the bench, the trial court gave oral reasons for his judgment stating that it appears that Ms. Powell was issued or transferred a policy in her name on July 3, 1996. The trial court found that there was no evidence that Mr. Jackson was responsible for the payments and that the statute specifically requires the notice to cancel for failure to pay premiums to be sent to the named insured.
On appeal, State Farm argues the ' language of the statute, LSA-R.S. |s22:6-36.1, does not require that the notice be addressed to the insured but instead it only requires that it be mailed to the insured. State Farm further argues that the mailed cancellation notice was addressed to Mr. Jackson because he was Ms. Powell’s mandatory and paid her insurance policy premiums. State Farm contends that notice to Mr. Jackson was *1231 sufficient to make Ms. Powell aware that the cancellation notice had been mailed because Mr. Jackson, her mandatory, received the communication. State Farm also contends that the issue is whether or not Ms. Powell knew that her policies premiums were not paid and that a notice of cancellation was sent to her.
An insurance company has the burden of proving that the policy had been canceled prior to the date of the loss which gave rise to the denied claim. Burge v. Allstate Insurance Co., 97-1087 (La.App. 5 Cir. 4/15/98), 710 So.2d 1196, citing Chapman v. Leger, 405 So.2d 604 (La.App. 3 Cir.1981). Where the evidence is sufficient to establish a prima facie case that the insurer mailed the cancellation notice in compliance with the relevant statute, the burden shifts to the insured to establish non-delivery of the notice. Gooden v. McMorris, 588 So.2d 783 (La.App. 4 Cir.1991), writ denied, 590 So.2d 1202 (La.1992).
In pertinent part, LSA-R.S. 22:636.1 provides as follows:
B. (1) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
[[Image here]]
D. (1) No notice of cancellation of a policy to tvhich Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; hoiuever, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written | firequest of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to non-renewal,
[[Image here]]
F. Proof of mailing notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice. (Emphasis Added).
In Theriot v. Midland Risk Insurance Co., 95-2895 (La.5/20/97); 694 So.2d 184, the Louisiana Supreme Court explained that the function of statutory interpretation rests with the judicial branch of government. In interpreting a statute, the starting point is the language of the statute itself. The paramount consideration is determining the legislature’s intent and the reasons that motivated the legislature to enact the law. Id. Words are to be given their general prevailing meaning while words of art and technical terms must be given their technical meaning when the law involves a technical matter. La. Civ.Code art. 11. Moreover, it is presumed that every word in a statute is designed to serve some useful purpose. See Losabia v. Cypress Hosp., 619 So.2d 151 (La.App. 3 Cir.), unit denied, 625 So.2d 1047 (La.1993).
It is undisputed that proof by the insurance company of mailing the cancellation notice to the named insured at the address on the policy shall be sufficient proof of notice under the applicable statute. Burge v. Allstate Insurance Co., 97-1087 (La.App. 5 Cir. 4/15/98), 710 So.2d 1196. If there is sufficient proof to make a prima facie case that State Farm mailed a cancellation notice dated July 10, 1996 with a cancellation date effective July 23, 1996 to Ms. Powell at the address on the company records, then the burden shifts to Ms. Powell to show that the notice was not received. Id. In the instant matter, we *1232 find, that State Farm did not meet its burden to make a prima facie case because it did not mail the cancellation notice to the named insured, Ms. Powell, as required by LSA-R.S. 22:636.1. It is undisputed from the record that the said notice was addressed to [7Mr. Jackson while the plain wording of the statute requires that the notice be mailed to the named insured, namely, Ms. Powell. Therefore, State Farm did not properly cancel Ms. Powell’s insurance policy because it did not meet the minimum requirement of notice under LSA-R.S. 22:636.1 to mail the notice to the named insured at least ten days before the cancellation of the policy with the reason for cancellation enclosed. Since State Farm did not properly cancel Ms. Powell’s insurance policy, the policy was in effect at the time that the accident occurred. Therefore, we find that Ms. Powell was covered by the State Farm policy at the time of the accident on December 14, 1996.
Based on the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.