SUSAN M. CHEHARDY, Judge.
 

 ^Appellants, Gail Nions and Sharon Payton, appeal the summary judgment in favor of appellee, USAgencies Casualty Insurance Company (“USAgencies”). For the following reasons, we affirm.
 

 On July 20, 2008, appellants were traveling on U.S. Highway 90B in Jefferson Parish in Ms. Nions’ vehicle when another car, which was owned and driven by defendant, Frederick Tobias, struck the vehicle. Appellants filed suit against Tobias and his insurer, USAgencies, among others who are not relevant to this appeal. Although USAgencies admitted that it had issued a policy of automobile insurance to Tobias, the company averred that the policy was cancelled before the accident.
 

 On November 24, 2009, USAgencies filed a Motion for Summary Judgment with attachments, contending that it was entitled to judgment as a matter of law on the issue of coverage because it had can-celled Tobias’ policy before the accident. USAgencies submitted six exhibits attached to its Motion, including: (1) a copy of the Declarations page, which was processed “5/19/08 10:37 a.m.” for Tobias’ | ainsurance policy with USAgencies; (2) a copy of the finance agreement between Tobias and LIFCO signed on May 19, 2008, which included a power of attorney authorizing LIFCO to cancel the policy in the event of non-payment of any installment; (3) a copy of Tobias’ application for personal automobile insurance dated May 19, 2008; (4) a copy of the ten-day notice of cancellation dated July 9, 2008 sent to Tobias that stated the effective date and hour of cancellation was 12:01:00 AM on July 19, 2008; (5) an affidavit of proof of mailing the notification dated July 9, 2008; and (6) a copy of the LIFCO’s July 9, 2008 notice to USAgencies to cancel Tobias’ policy for non-payment.
 
 [1]
 

 USAgencies also submitted an affidavit from Jenna Laughlin, the USAgencies Management Services employee that supervises LIFCO. Ms. Laughlin attested
 
 *219
 
 to the terms of Tobias’ finance agreement and his failure to pay prior to the cancellation date. The affidavit also verified that LIFCO did make a written request to USAgencies to cancel the policy due to non-payment of premium. Finally, the affidavit confirmed that the policy in question was not reinstated before the date of the accident.
 

 Ms. Nions and Ms. Richardson filed an opposition to USAgencies’ motion, which did not itself include any supporting documents or attachments. On January 20, 2010, the trial court heard and granted summary judgment in favor of USAgen-cies.
 

 Here, appellants argue that the trial court erred, as a matter of law, in granting summary judgment in favor of USAgen-cies because there was no genuine issue of fact regarding USAgencies’ failure to comply with the pertinent law. The ^appellants contend that the trial court’s ruling in favor of USAgencies was erroneous for two reasons: first, LIFCO did not mail an actual “notice of cancellation” to the insured, as required by the statute and second, LIFCO failed to certify that it sent
 
 “actual Notice of Cancellation”
 
 to the Secretary of the Department of Public Safety, Office of Motor Vehicles.
 

 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).
 

 Appellate courts review a judgment granting or denying a motion for summary judgment
 
 de novo. Bonin v. Westport Ins. Corp.,
 
 05-886 (La.5/17/06), 930 So.2d 906, 910. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Cutsinger v. Redfern,
 
 08-2607 (La.5/22/09), 12 So.3d 945 (citing
 
 Smith v. Our Lady of the Lake Hosp.,
 
 93-2512 (La.7/5/94), 639 So.2d 730). Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment.
 
 Id.
 
 The burden of proof is on the insurance company to show that the policy had been canceled prior to the date of the loss that gave rise to the denied claim.
 
 Doucet v. State Farm Ins.,
 
 99-663 (La.App. 5 Cir. 11/30/99), 748 So.2d 1228, 1231.
 

 La. R.S. 9:3550 applies to any person engaged in the business of financing insurance premiums for consumers entering into premium finance agreements or | sotherwise acquiring premium finance agreements. La. R.S. 9:3550(G) reads, in pertinent part:
 

 G. Insurance contracts may be canceled upon default as follows:
 

 (1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract ..., the insurance contract ... shall not be canceled ... unless such cancellation is effectuated in accordance with this Subsection.
 

 (2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records of the insur-
 
 *220
 
 anee premium finance company. In the event the default is not timely cured as provided herein and the insurance policy is canceled pursuant to the terms of the insurance premium finance agreement, a copy of the notice of cancellation of the insurance contract shall also be sent to the insurance agent negotiating the related insurance contract whose name and place of business appears on the insurance premium finance agreement. Such notice of cancellation shall also state the name of any governmental agency, holder of a security interest in the insured property, or third party also requiring notice of cancellation as shown on the insurance premium finance agreement.
 

 (3)(a) Ten days after notice of cancellation has been mailed to the insured, or fourteen days when notice is sent from outside of this state, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract, ... by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation, except when the payment has been returned uncollected, a copy of the notice of cancellation together with a statement certifying that:
 

 (i) The premium finance agreement contains a valid power of attorney
 
 [2]
 
 as provided in Paragraph (1) of this Subsection.
 

 |fi(ii) The premium finance agreement is in default and the default has not been timely cured.
 

 (iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.
 

 (iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.
 

 (b)(i) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract ... has been requested by the insured ... and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation as shown in said statement furnished to
 
 *221
 
 the insurer by the premium finance company.
 

 [[Image here]]
 

 (c) The receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured.
 

 [[Image here]]
 

 In their first argument, appellants specifically contend that USAgencies did not comply with La. R.S. 9:3550(G) because LIFCO’s
 
 “certification statement does not state that it sent the actual Notice of Cancellation
 
 to all persons shown by the premium finance agreement to have any interest in any loss which may occur thereunder,” as required by La. R.S. 9:3550(G)(3)(a)(iv). [Emphasis in original.]
 

 Appellants, relying on
 
 Dairyland Insurance Company v. Marks,
 
 468 So.2d 841 (La.App. 1 Cir. 4/16/85), argue that “a notice of intent to cancel a policy within ten days,” like the notice sent to Tobias, is a demand for payment, which is | ^different from an actual notice of cancellation. Appellants contend that USAgencies’ failure to send an “actual” notice of cancellation to Tobias means that USAgencies did not legally cancel the Lability insurance policy it issued to Tobias.
 

 In response, USAgencies contends that
 
 Dairyland, supra
 
 is inapplicable to this case because the LIFCO’s “TEN (10) DAY NOTICE OF CANCELLATION” in this case is materially different than the notice sent in
 
 Dairyland.
 
 At the hearing on its Motion for Summary Judgment, USAgen-cies submitted a copy of the notice in question dated July 9, 2008, which reads:
 

 You are hereby notified that the policy described above is cancelled due to nonpayment of an installment. The cancellation is effective on the above captioned Effective Date of Cancellation, at the hour indicated.
 

 The premium finance company will notify the following governmental agencies, lien holders and other third parties of the policy cancellation:
 

 Department of Motor Vehicles; P.O. Box 64886;
 

 Baton Rouge, LA 70896
 

 [[Image here]]
 

 To continue your policy without interruption of coverage, please remit the Balance Due ... prior to the Effective Date of Cancellation listed above.
 

 After the Effective Date of Cancellation, an additional late fee ... will be assessed ... [,] which must be remitted before the policy is reinstated.
 

 On that same “TEN (10) DAY NOTICE OF CANCELLATION,” the effective date/hour of cancellation is listed as “07/19/2008 12:01:00 AM.”
 

 In
 
 Dairyland Insurance Company v. Marks,
 
 468 So.2d 841, 843 (La.App. 1 Cir. 4/16/85), the notice, which was found to be insufficient, read in bold red letters as follows: “IMPORTANT: INSURANCE IS SUBJECT TO CANCELLATION IF PAYMENT IS NOT RECEIVED WITHIN 10 DAYS OF THIS NOTICE.”
 

 IsAfter comparing the language of USA-gencies “TEN (10) DAY NOTICE” to that found to be insufficient in
 
 Dairyland,
 
 we agree with USAgencies that the notice sent to Tobias was, unlike that in
 
 Dairy-land,
 
 an unambiguous and unequivocal notice of cancellation. Tobias was clearly put on notice that his policy was cancelled and his coverage would terminate at 12:01 a.m. on July 19, 2008, if he failed to pay his
 
 *222
 
 premium prior to that date. This argument is without merit.
 

 Next, appellants argue that USA-gencies failed to comply with La. R.S. 9:3550(G) when it failed to certify that it sent
 
 “actual Notice of Cancellation”
 
 to the Secretary of the Department of Public Safety, Office of Motor Vehicles. This failure, according to appellants, means that the cancellation of Tobias’ policy was legally ineffective.
 

 First, the relevant statute, La. R.S. 9:8550(G)(3) (c), states in part, that the insurer is entitled to rely on the facts transmitted by the premium finance company, and no liability of any nature whatsoever in favor of the insured shall be imposed upon the insurer as a result of the failure of any governmental agency to receive a required notice of cancellation. Second, in
 
 Clay v. Entwisle,
 
 10-19 (La.App. 5 Cir. 5/25/10), 42 So.3d 419, 425, this Court recently held that, “According to the statute, valid cancellation as to the insured is not dependent upon notice to the OMV.” Accordingly, this argument is without merit.
 

 Upon
 
 de novo
 
 review, we find that the trial court correctly found that there was no issue of material fact that the policy had been cancelled and that USAgencies was entitled to summary judgment. For the foregoing reasons, the judgment is affirmed.
 

 AFFIRMED
 

 [1]
 

 . LIFCO’s notice to USAgencies to cancel To-bias’ policy included a certification that:
 

 (1) The premium finance agreement contained a valid power of attorney;
 

 (2) The premium finance agreement was in default and the default had not been timely cured;
 

 (3) Upon default, a ten-day notice of cancellation was mailed to the insured, with a copy enclosed;
 

 (4) Copies of the 10 day Notice of Cancellation were mailed to all persons shown in the agreement to have an interest in any loss which may occur thereunder.
 

 [2]
 

 . In the present case, the Power of Attorney given by Tobias to LIFCO reads:
 

 I give you a Power of Attorney. If I fail to pay even one installment on the Promissory Note, I authorize you to cancel my insurance policy.... I give a Power of Attorney to notify my insurance company and any persons entitled to notice informing them of the cancellation of my insurance policy. After payment of all amounts due to you under this Agreement, I also give you Power of Attorney to pay to the insurance company (or allow the Insurance Company to retain) any unearned premiums or other amountsf,] which the insurance company may otherwise owe me, in order to purchase as much continued coverage under the insurance policy as such funds permit. I may not revoke this Power of Attorney while my Promissory note remains unpaid.