LUCY BENITEZ

VERSUS

AHMED ELSAYED, AFFIRMATIVE
INSURANCE COMPANY, AND LOUISIANA
INSURANCE GUARANTY ASSOCIATION

NO. 19-CA-122

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 768-981, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

December 04, 2019

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Hans J. Liljeberg

**VACATED AND REMANDED**

 **RAC**
 **MEJ**
 **HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
LUCY BENITEZ
    Ivan A. Orihuela

COUNSEL FOR DEFENDANT/APPELLEE,
LOUISIANA INSURANCE GUARANTY ASSOCIATION
    Stephanie B. Laborde
    Benjamin M. Chapman
    J. Jacob Chapman

**CHAISSON, J.**

In this automobile accident case, Lucy Benitez appeals the trial court's grant of summary judgment in favor of Louisiana Insurance Guaranty Association and dismissal of Ms. Benitez's claims against LIGA and Affirmative Casualty Insurance Company, in liquidation, with prejudice. For the reasons that follow, we vacate the judgment of the trial court and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

On February 10, 2016, Ms. Benitez was a passenger on a bus that was rear-ended by a 2012 Ford Fiesta operated by Ahmed R. Elsayed. As a result of injuries allegedly sustained in the accident, Ms. Benitez filed suit against Mr. Elsayed, Affirmative Casualty Insurance Company (ACIC)[1] as the alleged insurer of the vehicle, and Louisiana Insurance Guaranty Association (LIGA), which acquired all the rights, duties, and obligations of ACIC pursuant to La. R.S. 22:2051, *et seq.*, after ACIC was declared insolvent on April 11, 2016.

LIGA thereafter filed a motion for summary judgment with attachments, contending that it was entitled to judgment as a matter of law on the issue of lack of coverage because the ACIC insurance policy had been cancelled on January 3, 2016, prior to the accident at issue, for non-payment of premium. LIGA specifically maintained that the ACIC policy, which was financed through Confie Premium Finance (Confie), a premium finance company, was properly cancelled in accordance with the provisions of La. R.S. 9:3550, noting that the insured, Reda Abdelaal, was properly notified of the cancellation and was afforded an opportunity to avoid cancellation by payment prior to the effective date of cancellation. LIGA further maintained that Ms. Abdelaal did not remit any additional payments, and her policy was therefore cancelled. LIGA accordingly

---

[1] Ms. Benitez's petition incorrectly names this defendant as "Affirmative Insurance Company."

requested that the matter be dismissed and that judgment be rendered declaring that LIGA no longer has a duty to defend the alleged insured.

In support of its motion for summary judgment, LIGA submitted the May 4, 2018 affidavit of Jay Mayfield, a claims examiner for LIGA, with attached exhibits. In his affidavit, Mr. Mayfield attested that ACIC was declared insolvent on April 11, 2016; that as a result of this liquidation, LIGA is currently discharging its obligations with respect to claims made against ACIC; that ACIC issued a policy of automobile liability insurance to Ms. Abdelaal, bearing policy number 6468314, with effective dates of coverage from October 13, 2015, through April 13, 2016; and that the ACIC policy was properly cancelled, effective January 3, 2016, and Ms. Abdelaal was properly notified of the cancellation in accordance with La. R.S. 9:3550.[2] The following exhibits were attached to Mr. Mayfield's affidavit: Exhibit 1: the April 11, 2016 order of liquidation of ACIC; Exhibit 2: the ACIC insurance policy declarations page; Exhibit 3: the "notice of intent to cancel"[3] sent by Confie to Ms. Abdelaal and her agent, USAgencies-Harahan; and Exhibit 4: the "notice of cancellation"[4] sent by Confie to Ms. Abdelaal, ACIC, and USAgencies-Harahan and proof of mailing to Ms. Abdelaal.

Ms. Benitez filed an opposition to the motion for summary judgment alleging that the motion should be denied because LIGA failed to present clear and unequivocal proof that it satisfied the requirements of law for proper cancellation of an automobile insurance policy for non-payment of premium. Specifically, Ms. Benitez alleged that LIGA did not comply with La. R.S. 9:3550 because 1) LIGA

---

[2] The affidavit incorrectly states that the policy was cancelled in accordance with La. R.S. 9:3350. The applicable provision is La. R.S. 9:3550.

[3] This "notice of intent to cancel" is the notice contemplated by La. R.S. 3550(G)(2) sent to the insured to advise her that she is in default of the premium finance agreement, that she has ten days within which to cure the default by making the payment shown in the notice, and that it is Confie's intent to cancel her policy if she fails to cure the default within ten days.

[4] While not entirely clear, it appears that this second "notice of cancellation," which is a separate and distinct document from the first "notice of cancellation" sent to comply with subsection (G)(2), was presumably sent by Confie after Ms. Abdelaal failed to cure her default during the ten day grace period, and was sent by Confie in an attempt to comply with La. R.S. 3550(G)(3)(a).

failed to present a premium finance agreement containing a power of attorney granting to the premium finance company the authority to cancel the policy on behalf of Ms. Abdelaal, the insured; 2) LIGA failed to present evidence that the notice of intent to cancel allegedly sent by the premium finance company to Ms. Abdelaal was actually mailed or delivered to her electronically; and 3) LIGA failed to present evidence that it received any notice or statement from the premium finance company, either by mail or electronically, with a copy of the notice of cancellation.

LIGA filed a reply brief contending that the premium finance company did comply with the requirements of La. R.S. 9:3550, as evidenced by the documents attached to its motion for summary judgment. LIGA further maintained that even if the requirements of La. R.S. 9:3550 were not strictly complied with by the finance company, that determination does not result in a finding of coverage since LIGA is entitled to a conclusive presumption that the documentation received from the finance company was accurate.

The matter was thereafter submitted on briefs. On September 6, 2018, the trial court granted LIGA's motion for summary judgment and dismissed LIGA and ACIC, in liquidation, with prejudice, declaring that LIGA no longer has a duty to defend the alleged insured. Ms. Benitez now appeals asserting that the trial court erred in granting the motion for summary judgment.

## DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. *Upton v. Rouse's Enterprise, LLC*, 15-484 (La. App. 5 Cir. 2/24/16), 186 So.3d 1195, 1198, *writ denied*, 16-580 (La. 5/13/16), 191 So.3d 1057. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).

According to La. C.C.P. art. 966(A)(3), a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1) sets forth the burden of proof in a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Nions v. Richardson*, 10-610 (La. App. 5 Cir. 3/9/11), 62 So.3d 217, 219. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Ricalde v. Evonik Stockhausen, LLC*, 16-178 (La. App. 5 Cir. 9/22/16), 202 So.3d 548, 551-52, *writ denied*, 16-1923 (La. 12/16/16), 212 So.3d 1170.

Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. The burden of proof is on the insurance company to show that the policy had been cancelled prior to the date of the loss that gave rise to the denied claim. *Nions v. Richardson*, 62 So.3d at 219.

La. R.S. 9:3550 applies to any person engaged in the business of financing insurance premiums for consumers entering into premium finance agreements or

otherwise acquiring premium finance agreements. La. R.S. 9:3550(G) provides, in pertinent part:

> G. Insurance contracts may be canceled upon default as follows:
>
> (1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract, or contracts, or endorsements listed in the agreement, the insurance contract, or contracts, or endorsements shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
>
> (2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records of the insurance premium finance company. In the event the default is timely cured, the premium finance company shall, within three business days from the time the default was cured, mail or send electronic notice of rescission of the cancellation notice to the insured, at his last known mailing or electronic address as shown on the records of the premium finance company and to all other parties who had previously been sent notice of cancellation. In the event the default is not timely cured as provided herein and the insurance policy is canceled pursuant to the terms of the insurance premium finance agreement, a copy of the notice of cancellation of the insurance contract shall also be sent to the insurance agent negotiating the related insurance contract whose name and place of business appears on the insurance premium finance agreement. Such notice of cancellation shall also state the name of any governmental agency, holder of a security interest in the insured property, or third party also requiring notice of cancellation as shown on the insurance premium finance agreement.
>
> (3)(a) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract, or contracts, or endorsements by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation, except when the payment has been returned uncollected, a copy of the notice of cancellation together with a statement certifying that:
>
> (i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.
>
> (ii) The premium finance agreement is in default and the default has not been timely cured.
>
> (iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.

(iv)  Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.

(b)(i)  Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.

…

(c)  The receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever either in favor of the insured, any governmental agency, holder of a security interest in the insured property, or third party shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured, any governmental agency, holder of a security interest in the insured property, or third party to receive the notice of cancellation required by Paragraph (2) of this Subsection, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection. Upon mailing of any unearned premium and unearned commission to the insurance premium finance company as soon as practicable following such cancellation, the insurer shall be fully discharged from all liability under the insurance contract or contracts for any loss occurring subsequent to the effective date of cancellation.

In *KMJ Services, Inc. v. Hood*, 12-757 (La. App. 5 Cir. 4/10/13), 115 So.3d

34, 37, this Court discussed the requirements of La. R.S. 9:3550 as follows:

La. R.S. 9:3550(G) allows a premium finance agreement to contain a power of attorney enabling the premium finance company to cancel any insurance policy when an insured defaults on payments and the premium finance company elects to exercise that authority to effect cancellation of an insurance policy. *Stephens v. LeBlanc,* 03-1460 (La. App. 1 Cir. 5/14/04), 879 So.2d 262, 264; *Hunter v. Automotive Cas. Ins. Co.* (La. App. 5 Cir. 9/29/92), 606 So.2d 571, 574, *writ denied,* 609 So.2d 225.

There must be strict compliance with the following conditions to allow cancellation of an insurance policy under La. R.S. 9:3550(G):

(1) the debtor/insured has defaulted on the premium finance contract;

(2) there is a power of attorney clause in the debtor's contract with the premium finance company;

(3) the premium finance company has mailed notice of cancellation to the insured and the insured's insurance agent;

(4) either the premium finance company or the insurer has notified any mortgagee, governmental agency, or other interest (*sic*) third party indicated by the policy and;

(5) after a ten day delay in which the debtor had not made a payment, the premium finance company sent a copy of the notice of cancellation to the insurer, with a statement certifying compliance with 9:3550(G)(3).

Ms. Benitez now contends that the trial court erred in granting LIGA's motion for summary judgment because LIGA failed to present clear and unequivocal proof that ACIC[5] satisfied the requirements of La. R.S. 9:3550 for proper cancellation of the relevant automobile insurance policy for non-payment of premium. She specifically asserts, as she did in the trial court, that LIGA failed to present a premium finance agreement containing a power of attorney granting to the premium finance company the authority to cancel the policy on behalf of the insured; failed to present evidence that the notice of intent to cancel allegedly sent by the premium finance company to the insured was actually mailed or delivered to the insured electronically; and failed to present evidence, as required by La. R.S. 9:3550(G)(3)(c) that ACIC received any notice or statement from the premium finance company, either by mail or electronically, with a copy of the notice of cancellation.

---

[5] ACIC, as the insurer, is the entity that actually cancels the policy, and Ms. Benitez therefore specifically refers to ACIC's failure to satisfy the requirements of La. R.S. 9:3550 for proper cancellation of the policy. However, Ms. Benitez's arguments specifically address errors on the part of both ACIC and Confie, the premium finance company, regarding cancellation of the policy.

In order to determine whether summary judgment was appropriately granted, we now turn our attention to the documents submitted by LIGA in support of its motion. In particular, LIGA attached to its motion the affidavit of Jay Mayfield, a claims examiner for LIGA. In his May 4, 2018 affidavit, Mr. Mayfield attested that the ACIC policy was properly cancelled, effective January 3, 2016, and that the insured, Ms. Abdelaal, was properly notified of the cancellation in accordance with La. R.S. 9:3550. To support his assertion of proper cancellation, Mr. Mayfield attached, as Exhibit 3, a copy of the subsection (G)(2) notice of default and intent to cancel sent by Confie to Ms. Abdelaal and USAgencies-Harahan. This notice of intent, which set forth the date of mailing as December 24, 2015, advised Ms. Abdelaal as follows:

> Please be advised that because of your failure to make payment of the amount due under your Premium Finance Service Agreement with our company, we will request and effect cancellation of the policy or policies covered therein, pursuant to the power of attorney signed by you, unless the amount shown above as the Current Amount Due[6] on Your Loan is received in our office within 10 days of the date of this notice. If we do not receive payment within 10 days of the Date of Mailing of this notice, we will request cancellation of this policy(ies) to be effective on 01/03/2016 at 12:01 a.m. standard time. [Footnote added]

Also attached to Mr. Mayfield's affidavit, as Exhibit 4, is a "Cancellation Notice Effective 1/3/2016 12:01 A.M. Standard Time." This cancellation notice was sent by Confie to Ms. Abdelaal and advised her that the insurance policy number 6468314-3[7] "is hereby cancelled by the lender for reason: Non-Payment of Premium, pursuant to the authority given us by the power of attorney in your 'Premium Finance Agreement'." This cancellation notice also set forth the initial due date of the premium payment as December 23, 2015, and the installment

---

[6] The notice of intent listed the current amount due on the loan as $151.69, the initial due date as December 23, 2015, and the late charge to be incurred as $7.59.

[7] The correct policy number, as shown on the ACIC insurance policy declarations page, appears to be 6468314.

amount due as $151.70.[8]  Proof of mailing of this cancellation notice by Confie to Ms. Abdelaal was also provided as part of Exhibit 4 attached to Mr. Mayfield's affidavit.  The proof of mailing indicates the name and address of the sender (Confie Premium Finance), the name and address of addressee (Reda Abdelaal), and a date of "From 1/1/2016 to 1/5/2016."[9]  This cancellation notice was also sent by Confie to ACIC and USAgencies-Harahan, copies of which are attached as part of Exhibit 4.

We have carefully reviewed the documents submitted by LIGA in support of its motion for summary judgment and find deficiencies in the evidence introduced that preclude the granting of summary judgment at this time.  La. R.S. 9:3550 (G)(3)(a) is clear that ten days after the subsection (G)(2) notice of default and intent to cancel has been mailed to the insured, if the default has not been cured, the premium finance company may effect cancellation of the insurance contract by sending to the insurer, within five days after the date of cancellation, a copy of the notice of cancellation along with a statement certifying that 1) the premium finance agreement contains a valid power of attorney; 2) the premium finance agreement is in default and the default has not been timely cured; 3) upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured; and 4) that copies of the notice of cancellation were sent to all persons shown on the premium finance agreement to have an interest in any loss, which may occur thereunder.

---

[8] This notice also shows a late charge of $7.58, and a total amount due of $184.27, with no explanation of how this total amount due figure was determined.

[9] We note that neither Mr. Mayfield's affidavit, LIGA's memorandum filed in the trial court, nor LIGA's appellate brief alleges the exact date that this notice of cancellation was mailed.  From the exhibits introduced by LIGA, it is not entirely clear to us that the mailing of this notice complied with the strict time restrictions contained in La. R.S. 9:3550(G)(3)(a) for the mailing of this notice.  However, the parties do not raise this issue, and in light of our vacating the summary judgment, we pretermit any further discussion regarding compliance with the time restrictions of mailing.

In the present case, although Mr. Mayfield submitted an affidavit on May 4, 2018, attesting that the requirements set forth in La. R.S. 9:3550 for valid cancellation of an insurance policy had been followed, there was no evidence presented that Confie mailed, by any method, a certifying statement as contemplated by La. R.S. 9:3550(G)(3)(a). LIGA did, however, attach to its motion for summary judgment, as Exhibit 4, a copy of a "notice of cancellation" that Confie sent to Ms. Abdelaal, ACIC, and USAgencies-Harahan. Within the text of this notice of cancellation are statements that the premium finance agreement contains a valid power of attorney, that the premium finance agreement is in default, and that the default has not been timely cured. This "notice of cancellation" does not identify any particular employee of Confie that prepared the document, is not signed by any individual, and does not purport to "certify" any of the statements contained therein. We therefore have serious reservations as to whether this "notice of cancellation" suffices as the certifying statement required by La. R.S. 9:3550(G)(3)(a).

However, even if this "notice of cancellation" does suffice as the certifying statement required by La. R.S. 9:3550(G)(3)(a), it does not contain all of the certifying statements required by that subsection. Specifically, there is no statement in this "notice of cancellation" that advises the insurer that the subsection (G)(2) notice of default and intent to cancel was sent to the insured or specify the date that it was allegedly sent. LIGA itself, in its appellate brief, in arguing that the procedures set forth in La. R.S. 9:3550(G) were complied with, states:

> Abdelaal did not make any additional payments and her policy was cancelled effective January 3, 2016, at 12:01 a.m. [R. 82, 86]. Confie sent ACIC a copy of the Cancellation Notice, [R. 82, 86]. The Cancellation Notice provided a statement from Confie that Abdelaal's policy was being cancelled for "Non-Payment of Premium, pursuant to the authority given us by the power of attorney in your Premium Finance Agreement". [R. 82, 86]. The Cancellation Notice included the due date of the payment, the amount due, the effective date of the

cancellation, the insured's name and address, the account number, the policy number, and a list of all parties that received a copy of the cancellation notice. [R. 82, 86].[10] [Footnote added]

Thus, LIGA's own description of the notice of cancellation sent by Confie to ACIC does not contend that contained within that notice is a statement that ACIC was advised that a subsection (G)(2) notice of default and intent to cancel was sent to the insured or the date that it was sent.

We recognize that a copy of the subsection (G)(2) notice to the insured of her default and Confie's intent to cancel, with a purported mailing date of December 24, 2015, was attached to Mr. Mayfield's May 4, 2018 affidavit in support of LIGA's motion for summary judgment. However, nothing in Mr. Mayfield's affidavit, or in the documents themselves, establishes that "within five business days after the date of cancellation" ACIC received a copy of this subsection (G)(2) notice or a statement certifying that this notice "was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured," as required by La. R.S. 9:3550(G)(3)(a)(iii). The mere fact that a subsection (G)(2) notice of default and intent to cancel is now filed into the record in support of the pending motion for summary judgment is not sufficient to establish that ACIC was contemporaneously advised, at the time of cancellation, that the subsection (G)(2) notice was sent to the insured. Nor do we find Mr. Mayfield's general and conclusory statement that "[t]he ACIC policy was properly cancelled … in accordance with LSA-R.S. 9:3350 (*sic*)" sufficient to establish that there is no genuine issue of material fact as to whether the specific requirements of La. R.S. 9:3550(G)(3)(a)(iii) were in fact satisfied.

_____

[10] LIGA's references to pages 82 and 86 of the appellate record are to the "notice of cancellation" sent to ACIC and the insured **subsequent** to the insured's failure to cure the default during the ten day cure period, attached as Exhibit 4 to Mr. Mayfield's affidavit. The subsection (G)(2) notice to the insured of default and Confie's intent to cancel is found at page 81 of the appellate record, attached as Exhibit 3 to Mr. Mayfield's affidavit.

In its appellate brief, LIGA also asserts that even "if the requirements of La. R.S. 9:3550 were not strictly complied with by Confie, it does not result in a finding of coverage, since LIGA is entitled to a 'conclusive presumption' that the documentation received from Confie was accurate." La. R.S. 9:3550(G)(3)(c) provides, in part, that "[T]he receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct." Thus, a prerequisite to application of the conclusive presumption is the receipt by ACIC of a copy of the subsection (G)(2) notice of cancellation and certifying statement, which presumably would contain the necessary statements of facts that LIGA suggests should be conclusively presumed.

In the present case, there is no evidence to suggest that Confie provided ACIC with a certifying statement as set forth in La. R.S. 9:3550(G)(3)(a). Moreover, even if the notice of cancellation that was sent by Confie to ACIC, attached to Mr. Mayfield's affidavit as Exhibit 4, can be construed as the certifying statement, it does not set forth all of the information required to be certified by La. R.S. 9:3550(G)(3)(a), as discussed herein. Accordingly, absent receipt of a copy of the subsection (G)(2) notice of default and intent to cancel and a certifying statement, LIGA is not entitled to application of the conclusive presumption provided for in La. R.S. 9:3550(G)(3)(c).

## CONCLUSION

Given these deficiencies, we find that the trial court erred, based on the evidence presented, in granting summary judgment at this time in favor of LIGA and ACIC, in liquidation. Accordingly, we vacate the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

## VACATED AND REMANDED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 4, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 19-CA-122

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
J. JACOB CHAPMAN (APPELLEE)         STEPHANIE B. LABORDE (APPELLEE)         BENJAMIN M. CHAPMAN (APPELLEE)

### MAILED
IVAN A. ORIHUELA (APPELLANT)         ADREJIA BOUTTE SWAFFORD (APPELLEE)
ATTORNEY AT LAW                      ATTORNEY AT LAW
3213 FLORIDA AVENUE                  601 POYDRAS STREET
SUITE C                              SUITE 2300
KENNER, LA 70065                     NEW ORLEANS, LA 70130